**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward R. DEAL, Defendant–Appellant.**

No. 97–3764.

United States Court of Appeals,
Seventh Circuit.

Argued April 10, 1998.

Decided June 9, 1998.

Charles E. Ex (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Keith Spielfogel (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.

POSNER, Chief Judge.

The defendant pleaded guilty to having defrauded his employer of more than $200,-000 and was sentenced to 18 months in prison. The sentence would have been shorter had the judge not found that Deal had abused a position of trust, U.S.S.G. § 3B1.3, and we must decide whether the finding was clearly erroneous—which depends in turn on the vexed question of what is a "position of public or [in this case] private trust." The guideline does not define the term, but the commentary to it describes a position of trust as one "characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." Examples given of offenses that are facilitated by the abuse of a position of trust are "embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination," and these cases are contrasted with those of "an embezzlement or theft by an ordinary bank teller or hotel clerk." Unfortunately, Deal falls into none of the enumerated categories.

He had for 13 years been the "comptroller" of a shopping center in a Chicago suburb. His job was to maintain his employer's financial books and records and to prepare monthly financial statements for review by the general manager of the shopping center. He also approved invoices for payment, but he was required to submit the invoices that he approved to the general manager for final approval.

For three years Deal defrauded the shopping center by preparing and then approving phony invoices from a company owned by him and his wife, forging the general manager's initials on the invoices to signify final approval to pay them, and then removing the record of the payment of the invoices from the shopping center's checkbook, which was in Deal's charge, in order to make it harder for the general manager to discover the scam.

Deal's lawyer, in an effort to push his client toward the bank teller-hotel clerk end of the spectrum, emphasizes that Deal was not a C.P.A. or even a graduate of a four-year college, that he was under the supervision of the general manager, and that his salary was modest ($42,500). The lawyer argues that although Deal was called "comptroller," he was just a glorified bookkeeper—not someone to be compared to a lawyer, a doctor, or a bank executive.

It is helpful in interpreting a statute or, as here, a regulation to ask what the purpose of the statute or regulation is. Why are people who abuse a position of trust to be punished more heavily than other criminals? · One answer is that a worker who, usually by reason of his expertise, is given a good deal of autonomy by his employer—that is, is trusted—will find it easier to steal, or (as in the case of the doctor) do other harm, without being caught, than a worker who is closely supervised. E.g., *United States v. Zaragoza*, 123 F.3d 472, 482 (7th Cir.1997); *United States v. Stewart*, 33 F.3d 764, 768 (7th Cir. 1994); *United States v. Barakat*, 130 F.3d 1448, 1455 (11th Cir.1997); *United States v. Gill*, 99 F.3d 484, 489 (1st Cir.1996). With opportunity and a good chance of escaping detection comes temptation, and the punishment is ratcheted up accordingly. In algebraic terms, if $C$ (for punishment cost) is the "price" of crime that society wants the prospective criminal to take into account in deciding whether to commit the crime, $p$ the probability that if he commits the crime he will be caught and punished, and $S$ (for sentence) the term of imprisonment if he is punished, then $C$ will be a function of $p$ and $S$, as in $C = pS$. So, to maintain the desired punishment cost if $p$ falls because the prospective criminal has been given a position of trust that will make it easier for him to evade punishment, $S$ must be increased correspondingly. A different way to make the same point is to note that credible punishment encourages trust by making trust less risky to the trusting, and trust is an efficient substitute for continuous surveillance.

The educational or other credentials of a defendant are of little significance in assessing whether the position he occupied was one of trust. Would the abuse of trust by the doctor in the example given in the guideline commentary be less serious if he were an imposter, and had had no medical training whatever? It would not be, and the majority view is that therefore an enhancement under the abuse of trust guideline is proper in such a case. *United States v. Barnes*, 125 F.3d 1287, 1292 (9th Cir.1997); *United States v. Gill, supra*, 99 F.3d at 489; *United States v. Queen*, 4 F.3d 925, 928–30 (10th Cir.1993). The Second Circuit disagrees, but only because it believes that other provisions of the guidelines provide adequate enhancement in such a case and that section 3B1.3, in speaking of "persons holding such positions" (i.e., positions of trust), excludes the imposter. *United States v. Echevarria*, 33 F.3d 175, 181 (2d Cir.1994). We need not take sides in this dispute; Deal was not an imposter.

Besides imposture and formal education as methods of achieving positions in which one is trusted, there is learning by doing and learning in the school of hard knocks. By dint of many years of doing an accountant's work, Deal had been entrusted with responsibilities that might otherwise have devolved on a person having a college or graduate degree in accounting but less practical experience and a shorter track record with this employer. Nor do we think it important that

Deal's autonomy was not complete. No one who is entrusted with large amounts of money is trusted completely. A company's books are usually audited by an outside accountant, implying that even the company's chief financial officer is not trusted fully. They were audited here, but Deal's position enabled him to doctor the books and by doing so to throw the auditors off the scent. Deal was a senior financial officer, and, as the district judge emphasized, the fact that he was able to steal so much and escape detection for so long is evidence (and not bootstrapping, as the defendant argues) that he had a position of trust in which he could get away with more money and for a longer time than a hotel clerk or a bank teller would be likely to be able to do. Cf. *United States v. Chimal*, 976 F.2d 608, 613–14 (10th Cir.1992).

We are dealing with matters of degree, and in such cases a good deal of latitude must be allowed the trier of fact. Given the amount of autonomy, limited as it was—as it always is—that Deal had, and the opportunity for fraud that it conferred, the judge cannot be thought to have committed a clear error in holding the abuse of trust guideline applicable.

AFFIRMED.