In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1537

United States of America,

Plaintiff-Appellee,

v.

Jovel Hernandez,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 CR 900--Charles P. Kocoras, Judge.

Argued October 4, 2000--Decided November 9,
2000

Before Manion, Evans, and Williams, Circuit
Judges.

Manion, Circuit Judge.  Jovel Hernandez
stole $115,000 from Zenith Electronics
Corporation while employed as one of its
staff accountants. As a result, a jury
found Hernandez guilty of nine counts of
wire fraud, 18 U.S.C. sec. 1343, and six
counts of passing forged securities, 18
U.S.C. sec. 513(a). He was sentenced to
30 months' imprisonment. On appeal,
Hernandez challenges the district court's
determination that he abused "a position
of trust," which resulted in a two-level
upward adjustment under U.S.S.G. sec.
3B1.3. We affirm.

I.

In 1994, Zenith hired Hernandez as a
staff accountant in the Tax Department of
its Glenview, Illinois, office.  The Tax
Department included Director of Taxes
Bernadette Abdow, Tax Supervisor James
Rapcan, Hernandez, and four other staff
accountants. Hernandez's duties included

calculating Zenith's sales and use tax liabilities for jurisdictions across the country and preparing check request forms that authorized the Payables Department to generate payment checks. In August 1996, Hernandez began preparing check requests for phony tax debts and, with the aid of accomplice Antoin Howard, depositing the resulting checks in Howard's personal bank account. Hernandez and Howard then shared the proceeds.

Before a check request form could be sent to the Payables Department, however, it required the signature of one of the supervisors, Abdow or Rapcan. To prevent their thorough review of his fraudulent check requests, Hernandez would ask one supervisor to quickly sign the form while falsely asserting that the other supervisor had already reviewed it but had merely forgotten to sign it. Hernandez would then forward the fraudulent check request form to the Payables Department. In order to assure that the newly created checks were sent to him instead of the named payee, Hernandez would mark the "return to check requestor" box on the request form. He then gave the checks to Howard. The scheme went undetected for four months, until Howard's bank froze his account to investigate the unusually large number of third-party checks being deposited into his account. A jury convicted Hernandez of wire fraud and forgery.

At sentencing the district court set Hernandez's base level at six, see U.S.S.G. sec. 2F1.1(a); added two levels for the amount of loss, calculated at $115,261.24, see id. sec. 2F1.1(b)(1)(G); and added two more levels because the offense involved more than minimal planning, see id. sec. 2D1.1(b)(2)(A). The court then increased the total by two more levels because Hernandez played a leadership role. See U.S.S.G. sec. 3B1.1(c). These calculations are not in dispute. Over Hernandez's objection, however, the district court also assessed another two levels for abuse of a position of private trust under U.S.S.G. sec. 3B1.3. With the resulting total offense level of 18, and a Category I criminal history, Hernandez's guideline imprisonment range was 27-33 months. The court sentenced him to 30 months'

imprisonment. On appeal Hernandez challenges the two-level increase for abuse of position of trust.

II.

Hernandez first argues that his "staff accountant" position could not possibly have constituted a "position of trust" within the meaning of the guideline because Zenith--from whose perspective Hernandez says the sentencing court must look--gave him a title and a job description that conferred neither "supervisory" nor "managerial" authority. This interpretation of "position of trust" is a legal question that is reviewed de novo. See United States v. Paneras, 222 F.3d 406, 412 (7th Cir. 2000); United States v. Strang, 80 F.3d 1214, 1219 (7th Cir. 1996).

Our cases reject Hernandez's position. Job title alone does not answer whether a position is one of trust because "a diminutive title or lack of sweeping power are unimportant." United States v. Sierra, 188 F.3d 798, 802 (7th Cir. 1999). Instead, sentencing judges should assess the actual amount of access an employee has "to items of value." United States v. Lamb, 6 F.3d 415, 419 (7th Cir. 1993). See also Strang, 80 F.3d at 1220 (rejecting contention that without an actual license defendant who posed as licensed securities broker could not possibly have abused a position of trust); United States v. Lilly, 37 F.3d 1222, 1227-28 (7th Cir. 1995) (upholding sec. 3B1.3 adjustment for defendant "Pastor" who misused church funds, although not officially labeled "financial officer"); see generally United States v. Allen, 201 F.3d 163, 166 (2d Cir. 2000) (discounting importance of employee's title). The fact that Hernandez was a "staff accountant" while Abdow was "Director of Taxes" and Rapcan the "Tax Supervisor" does not mean that Hernandez could not possess supervisory or managerial duties.

Hernandez responds, though, that our willingness to look beyond job title, as announced in cases beginning with Lamb, is no longer appropriate after the 1993 amendment to Application Note 1 of sec.

3B1.3. In its present form,/1 Application Note 1 explains that a position of trust is characterized by "professional or managerial discretion," which the application note goes on to define as "substantial discretionary judgment that is ordinarily given considerable deference." Hernandez suggests that, despite Lamb and subsequent cases, Application Note 1 indeed requires sentencing courts to analyze "positions of trust" by how an employer labeled a position, rather than according to actual job duties.

We see no reason to depart from Lamb, because we conclude that the reference to "professional" or "managerial" discretion in the present version of Application Note 1 is not inconsistent with the Lamb standard. Application Note 1 does not specify that "professional" or "managerial" discretion must be conferred through the job title alone; in fact, the language of the note suggests that district courts should look beyond job title. Indeed, the same note explains that persons holding positions of trust are usually "subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature," see U.S.S.G. sec. 3B.1.3, and only by comparing the actual work performed by various employees can a sentencing judge determine whether the defendant is "less supervised" or has "more discretion" than other employees. Hernandez concedes as much by suggesting his job be analyzed from Zenith's "perspective;" the "perspective" of Zenith, of course, includes not only an employee's title, but also the tasks carried out by that employee, whetherformally assigned or not. Thus, although Hernandez argues that Application Note 1 cabins the district court's inquiry, we reject his interpretation of the Note and his invitation that we abandon Lamb's approval of a more thorough examination in determining positions of trust.

In the alternative, Hernandez argues that, even under Lamb, the district court erred in finding that he occupied a position of trust. Insofar as this is his argument, the district court's finding that Hernandez occupied a position of

trust is a factual finding that we review only for clear error. United States v. Bailey, No. 99-2933, 2000 WL 1281332, at *13 (7th Cir. Sept. 12, 2000). Upon reviewing the record, we agree with the district court's finding that Hernandez occupied a position of trust.

As noted previously, we have endorsed the view that in applying sec. 3B1.3 the district court should consider the "amount of access and authority over valuable things" that the defendant had. Sierra, 188 F.3d at 802; see Bailey, 2000 WL 128132 at *14. In this case, Hernandez possessed considerable access and authority over valuable property. He was the only accountant responsible for generating the sales and use tax returns for the entire states of Alabama and Louisiana, and he alone calculated the amount assessed to each region. Based on his false representations that his work had already been reviewed, his supervisors simply signed the requests without actually verifying them./2 Just by using his routine job tasks, then, Hernandez fraudulently gained access to over $115,000 in only four months.

Moreover, despite Hernandez's contrary contention, the district court also relied upon factors beyond Hernandez's access to Zenith's funds in finding a position of trust. The record also shows his autonomy in preparing check request forms, his supervisors' virtual rubber-stamping of his work, and his ability to use routine forms to route large payment checks directly into his own hands. These actions show not just physical access to Zenith's funds, but that Zenith's system was based on its faith in its staff accountants' honesty in presenting their work to their supervisors and in sending payment checks to the correct payee. Simply by checking a box on a form and lying to his supervisors, Hernandez was able to directly route $115, 000 to his hands. Zenith expected Hernandez to identify its tax liabilities and make sure those taxes were paid in the most efficient manner. Hernandez had more than access to the company's funds; he held a position where his representations that Zenith needed to pay out those funds was virtually unquestioned. The trust inherent in his position was key to the smooth execution of his scheme; indeed, Hernandez was

stopped, not because Zenith was looking over his shoulder, but because Howard's bank was vigilant in protecting itself against fraud losses.

In this regard, Hernandez's attempt to fit himself within the "bank teller" example of Application Note 1 is unpersuasive. Regardless how Hernandez characterizes his job at Zenith, we have previously held that an employee similar to Hernandez occupied a position of trust. See United States v. Deal, 147 F.3d 562, 563-564 (7th Cir. 1998). In Deal, the defendant worked as a comptroller of a shopping center. He kept the monthly financial records and submitted them for review to his general manager. Id. at 563. Like Hernandez, Deal created false statements that caused the company to make unnecessary payments. Id. We rejected the notion that supervisory review is inconsistent with a position of trust, as we observed that "[n]o one who is entrusted with large amounts of money is trusted completely." Id. at 564. Regardless of his title, Hernandez's actual duties involved substantial discretion and responsibility. Given this extensive amount of responsibility, his "I was merely a bank teller" argument is unconvincing.

AFFIRMED.

/1 Application Note 1 provides, in relevant part:

Public or private trust refers to a position of public or private trust characterized by professional or managerial discretion (i.e. substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g. by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This

adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

U.S.S.G. sec. 3B1.3, comment. (n.1) (1998).

2/ Although Hernandez argues that this lax review is not evidence of a position of trust, see United States v. Helton, 953 F.2d 867, 870 (4th Cir. 1992), we agree with the district court that the important point is not that Hernandez's supervisors were lax, but rather why the supervisors felt they could be lax: a combination of Hernandez's false representations and their trust in him. If his job is to be viewed from Zenith's perspective, as Hernandez advocates, his supervisors' view of his position is certainly relevant.