In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3170

United States of America,

Plaintiff-Appellee,

v.

Eduardo Manalo Tiojanco,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 229-1--Ruben Castillo, Judge.

Argued January 30, 2002--Decided April 17, 2002

   Before Manion, Diane P. Wood, and Evans,
Circuit Judges.

   Evans, Circuit Judge.  Eduardo Tiojanco
pleaded guilty to a federal wire fraud
charge (18 U.S.C. sec. 1343) after using
his position as an accounts receivable
clerk at Chicago's Palmer House Hilton to
steal more than a quarter of a million
dollars in hotel funds. He was able to
turn this trick because he worked with
the hotel's credit card accounts and,
with access to them, he disguised credit
card refunds that went to cards he
controlled as refunds destined for hotel
guests. He appeals a 2-level upward
adjustment hereceived under U.S.S.G.
sec.3B1.1 for abusing a position of
private trust.

   From 1988 to 1998 Tiojanco worked as a
clerk in the Palmer House's accounts
receivable department, where he was
responsible for handling telephone calls
from hotel guests who disputed charges
made to their credit card accounts. In
1993, after 5 years on the job, Tiojanco
decided to augment his salary by ripping
off the hotel. Using credit card numbers
issued in the name of an accomplice
(Antonio Reyes), Tiojanco devised a
scheme to issue credits to them as if
they were owed to a hotel guest. He
"processed the credit" by forwarding to
his supervisor, the hotel's comptroller,

a "rebate slip" listing the amount of the credit and the reason for the refund. The comptroller, thinking it was a legitimate refund to a deserving guest, initialed the slip and passed it on to the hotel's night audit division for processing. The night audit department performed no review function and the comptroller's review was limited--he never spoke directly with "complaining" hotel customers but instead relied on the rebate slips Tiojanco submitted. This enabled Tiojanco to process $261,755.25 in phony refunds to 36 different credit card accounts he (and his accomplice) controlled.

The district court found that Tiojanco held a "key" position at the Palmer House, that he was entrusted with valuable credit card information, and that his supervisor relied heavily on Tiojanco's work. The court concluded that Tiojanco's job required him to exercise "professional discretion" and thus was a position of private trust, and that Tiojanco had abused that position by committing this massive fraud. See U.S.S.G. sec.3B1.3 & comment. (n.1). Accordingly, the court increased his offense level from 15 to 17. Tiojanco's criminal history category was I, so the adjustment only resulted in a modest change from 18-24 months to 24-30 months in his guideline range. The sentence Tiojanco received--24 months imprisonment--would thus have been possible even without the sec.3B1.3 adjustment.

A survey of recent cases in which we have upheld application of the adjustment for abusing a position of private trust demonstrates the futility of Tiojanco's argument. The cases fall into two general categories; the first includes people like doctors, lawyers, and investment advisors who have (or hold themselves out as having) specialized expertise that leaves the average layman ill-equipped to monitor their job performance. This explains why we have found the adjustment properly applied to a psychologist who failed to provide treatment to her mentally ill patients, see United States v. Hoogenboom, 209 F.3d 665, 667, 671 (7th Cir. 2000), and a doctor who ordered unnecessary tests and contraindicated treatments, see United States v. Vivit, 214 F.3d 908, 911-13, 923-24 (7th Cir.

2000)--both of whom nonetheless attempted to obtain reimbursement from their patients' insurers--and a lawyer representing a debtor in bankruptcy who failed to disclose his firm's connection to a senior secured creditor, see United States v. Gellene, 182 F.3d 578, 581, 596-97 (7th Cir. 1999). Doctors and lawyers enjoy significant discretion in deciding what course of action is appropriate for their patients and clients; patients and clients (and their insurers) are forced to rely on theseprofessional judgments. Similarly, clients of investment advisors face a discontinuity in expertise but place trust in their advisors, granting them discretion to invest their funds with the understanding that the advisor will act in the investor's best interests. And so we have concluded that those who hold themselves out as having extensive experience trading commodities, see United States v. Davuluri, 239 F.3d 902, 904, 908-09 (7th Cir. 2001), or securities, see United States v. Frykholm, 267 F.3d 604, 612-13 (7th Cir. 2001), or as holding a Series 7 license, see United States v. Paneras, 222 F.3d 406, 412-13 (7th Cir. 2000), may occupy positions of private trust with respect to individual investors, and that those who make use of the corporate form of doing business assume a fiduciary duty, and thus occupy a position of trust, with respect to the corporation's investors, see United States v. Bhagavan, 116 F.3d 189, 193 (7th Cir. 1997); United States v. Strang, 80 F.3d 1214, 1216, 1220 (7th Cir. 1996).

A second category of positions of trust exists in organizational settings, where businesses or similar entities charge particular employees with deciding, on a case-by-case basis, whether a particular expenditure or transfer of company funds or other valuables is necessary or beneficial to the organization. Some employees have unfettered authority to spend company money; others provide initial authorization that for reasons of efficiency is subject only to nominal review. In the latter case, supervisors defer to lower-level decisionmakers, who generally have first-hand knowledge of the relevant facts through personal observation, customer interaction, or document review. Thus, we have held that the position-of-trust adjustment was

properly applied to an assistant manager of a bank branch who had authority to transfer large amounts of funds without supervisory approval, see United States v. Anderson, 259 F.3d 853, 863 (7th Cir. 2001), and a bank vice president whose duties as compliance officer included insuring that all loan documents and accounts--including those accounts he personally administered--were in order, see United States v. Sonsalla, 241 F.3d 904, 909-10 (7th Cir. 2001), as well as a postal service employee responsible for certifying that construction contractors had properly completed their work, in effect recommending that they be paid, see United States v. Emerson, 128 F.3d 557, 559-60, 562-63 (7th Cir. 1997), a staff accountant charged with determining a corporation's sales and use tax liabilities and requesting checks to pay them, see United States v. Hernandez, 231 F.3d 1087, 1088-91 (7th Cir. 2000), and a shopping center comptroller responsible for initially approving payment invoices before submitting them to a general manager for final approval, see United States v. Deal, 147 F.3d 562 (7th Cir. 1998).

What makes all of the jobs in both of these categories similar, though our cases have not always stated it explicitly, is that they involve the type of complex, situation-specific decisionmaking that is given considerable deference precisely because it cannot be dictated entirely by, or monitored against, established protocol. All of these individuals are charged with exercising their judgment in the best in terest of another person or entity; this is the essence of the "professional or managerial discretion" to which theguideline refers. See U.S.S.G. sec.3B1.3, comment. (n.1) (a "position of public or private trust [is] characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)," such as a doctor, bank executive, or an attorney serving as a guardian).

We think Tiojanco fits comfortably within the class of discretionary decisionmakers covered by the guideline and are unpersuaded by his argument that he is more like the "ordinary bank teller or hotel clerk" who is exempted from the

adjustment. See U.S.S.G. sec.3B1.3, comment. (n.1) ("adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk"). Certainly he was a "clerk" who worked in a "hotel," but the Palmer House obviously contemplated that he would have primary responsibility for issuing well over $50,000 in customer refunds each year; otherwise, the average of $50,000 Tiojanco tacked on for himself and his accomplices in each of the 5 years he carried out his fraud could not have gone unnoticed. This is not the type of responsibility granted to a typical hotel desk clerk.

Tiojanco also suggests he could not have occupied a position of trust because he was a "low-level" employee earning a modest salary ($26,000 to $27,000) and has no professional degree or even formal training in accounting. But as we have explained before, a defendant's "educational or other credentials . . . are of little significance in assessing whether the position he occupied was one of trust." Deal, 147 F.3d at 563; see also Frykholm, 267 F.3d at 612 (whether defendant was licensed broker does nothing to answer the position of trust question). Practical experience and a long track record with the company are other factors that lead employers to entrust employees with responsibilities that might otherwise go to someone with more formal education (and thus a higher salary). See Deal, 147 F.3d at 563. This is precisely what happened to Tiojanco, who was promoted to the Palmer House's accounting department after 5 years' work as a "storeroom clerk."

Tiojanco's final assertion--that the district court clearly erred in finding that his job required him to exerciseprofessional discretion--fails to account for the entirely reasonable inference that listening to customers' stories and then determining the validity of their complaints required him to exercise judgment in evaluating the complaining customers' credibility. See Anderson, 259 F.3d at 862 (district court's factual finding that defendant occupied a position of trust is reviewed for clear error); United States v. Zaragoza, 123 F.3d 472, 482 (7th Cir. 1997) (relying on reasonable inference that defendant's job involved "managerial

discretion"). Tiojanco points to no evidence undermining this inference, but even if he did, he would fail to establish that the district court's inference was clear error. See United States v. Bailey, 227 F.3d 792, 800 (7th Cir. 2000) ("Where two permissible interpretations of the evidence are possible, a factfinder's choice of one is not clearly erroneous.").

AFFIRMED.