**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jeffrey BAILEY, Defendant–Appellant.**

**No. 02–3125.**

United States Court of Appeals, Sixth Circuit.

Feb. 11, 2003.

Before SILER and ROGERS, Circuit Judges; and GWIN, District Judge.*

*ORDER*

Jeffrey Bailey, represented by counsel, appeals from his judgment of conviction and sentence. The parties have expressly

---

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

750

waived oral argument, and this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In May 2001, Bailey pleaded guilty to fraud, false reporting and deception in connection with commodities futures contracts in violation of 7 U.S.C. §§ 6b and 13. The court sentenced him to 27 months of imprisonment.

Bailey has filed a timely appeal, arguing that the district court erred when it enhanced his offense level under USSG § 3B1.3, because the government did not prove by a preponderance of the evidence that he held a position of trust as a commodities broker and because he cannot be considered a fiduciary as is required for the enhancement.

Upon review, we conclude that the district court properly enhanced Bailey's offense level under § 3B1.3. This court reviews de novo a district court's application and interpretation of the sentencing guidelines; however, the district court's factual determinations will not be disturbed unless they are clearly erroneous. *United States v. O'Dell,* 247 F.3d 655, 674 (6th Cir.2001); *United States v. Murphy,* 241 F.3d 447, 458 (6th Cir.), *cert. denied,* 532 U.S. 1044, 121 S.Ct. 2013, 149 L.Ed.2d 1014 (2001). Section 3B1.3 provides, in pertinent part, that a district court may enhance a sentence of a defendant who "used a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." A position of trust is "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." *See* USSG § 3B1.3 comment (n.1). Such a relation arises when "a person ... intentionally makes himself ... vulnerable to someone in a particular position, ceding to the other's presumed better judgment some control over their affairs."

*United States v. Brogan,* 238 F.3d 780, 783 (6th Cir.2001). In dictum, this court has stated that an "investment consultant" occupies a position of trust, *see United States v. Humphrey,* 279 F.3d 372, 381 (6th Cir.2002). Moreover, the Seventh Circuit has held that a commodities broker occupies a position of trust. *See United States v. Frykholm,* 267 F.3d 604, 612–13 (7th Cir.2001); *United States v. Davuluri,* 239 F.3d 902, 908–09 (7th Cir.2001).

A review of the record reflects that Bailey occupied a position of trust. Although Bailey appears to argue that he did not have "substantial" discretion to invest his clients' money, it is obvious that he had such discretion since his clients were unaware in what, if anything, Bailey was actually investing their money. Furthermore, Bailey acknowledged that commodities is an extremely volatile, high risk market. Bailey does not dispute that, as president and owner of JMK Capital Management Corporation and JMK Futures Fund, he began acting as a trading advisor, and that he took money entrusted to him by his clients and for the purpose of investing it in commodities futures contracts on their behalf. Between May 1998 and March 2001, Bailey received over $619,070 from various investors. However, he invested only $248,000 of that amount and diverted the remainder for either personal use or to pay back previous investors. Bailey began to mail investment statements to investors that reflected exaggerated and/or fraudulent investment earnings. In reliance upon these statements, some clients invested additional funds with Bailey, and some referred other investors to Bailey. After January 2001, Bailey had provided more than sixty investors with fraudulent investment statements indicating that, collectively, the investors had over $1,800,000 in deposits and earnings. In

reality, there was less than $39,000 in Bailey's trading accounts.

Based on these facts, the district court properly concluded that Bailey had abused a position of trust. First, the investors' decisions to permit Bailey to control their investments weighs in favor of the district court's conclusion that Bailey held a "position of trust." *See, e.g., United States v. Tiojanco*, 286 F.3d 1019, 1020–21 (7th Cir. 2002) (court noted that clients of investment advisors place their trust in their advisors, granting them discretion to invest their funds with the understanding that the advisor will act in the investor's best interests). Second, Bailey's ability to use his position to conceal the nature of his scheme to defraud the investors weighs in favor of the district court's conclusion that Bailey held a "position of trust." *See, e.g., United States v. Iannone*, 184 F.3d 214, 225 (3d Cir.1999) (court concluded that defendant's managerial position was a position of trust because it allowed him to prevent detection of his fraud via publication of false progress reports). Bailey, as president and owner of the JMK companies, used his position to conceal the scheme by creating false investment statements and sending them to his clients to indicate that they were earning money. He also sent some investors "returns" that were actually other investors' money.

Accordingly, we affirm the district court's judgment.