In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-2664

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BLAZEJ M. WASILEWSKI,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11 CR 575-1—**Charles R. Norgle**, *Judge.*

ARGUED OCTOBER 23, 2012—DECIDED DECEMBER 19, 2012

Before FLAUM and SYKES, *Circuit Judges*, and RANDA, *District Judge.*[*]

RANDA, *District Judge.* Blazej Wasilewski ("Wasilewski") stole over $40,000 from the bank he worked for as an assistant branch manager. Wasilewski pled guilty to one count of embezzlement, and at sentencing the district

[*] The Honorable Rudolph T. Randa, United States Court for the Eastern District of Wisconsin, sitting by designation.

court applied a two-level enhancement for abusing a position of trust under U.S.S.G. § 3B1.3. The district court then sentenced Wasilewski to six months' imprisonment, followed by two years of supervised release with six months of home confinement.

On appeal, Wasilewski argues that the district court erred by applying the abuse of trust enhancement. Wasilewski also argues that the district court erred by treating the sentencing guidelines as mandatory and requiring a prison sentence. Neither argument has merit, so we affirm the district court's sentence.

## I. Background

Wasilewski was an assistant vice-president and assistant manager at a Chase Bank branch in Glenview, Illinois. Wasilewski was generally responsible for the daily operations of the bank, which included assigning teller drawers and safes, maintaining codes for the drawers and safes, and performing audits on teller drawers and teller cash dispensers ("TCDs"). Wasilewski had a key to the bank's front door and a PIN to deactivate the perimeter and vault alarms. Wasilewski performed closing procedures at the bank with the assistance of another employee. He also had one-half of a multi-digit code that could be combined with another employee's code to open a TCD.

On August 26, 2011, at 4:15 p.m., Wasilewski entered the employee break room where the bank's electrical closet was located and momentarily shut off the bank's power

supply before turning the power back on. At 6:47 p.m., Wasilewski switched the power off again, but this time he did not switch it back on. That evening while performing the closing procedures, Wasilewski entered the bank's server room where the backup switch was located and unplugged the cords to the bank's master power supply boxes. At 7:30 p.m., Wasilewski contacted the bank's corporate security department to remotely reset the alarm. However, the bank remained without power until the next morning, during which time the bank's video surveillance was unable to record images inside the bank.

Wasilewski left and later returned to the bank, using his PIN to deactivate the perimeter alarm. At 1:56 a.m., Wasilewski again used his PIN to deactivate the vault alarm, which also protected the TCDs. At some point before entering the bank that morning, Wasilewski came to possess another employee's four-digit TCD code. Wasilewski used that code and his own to open the TCD. Wasilewski removed $40,988.78 in cash and fled the bank.

At 7:44 a.m. that morning, Wasilewski boarded a flight to the Dominican Republic. Upon arrival, customs officials searched Wasilewski's laptop bag and found $39,765 in United States currency. Wasilewski was arrested and detained by the Dominican National Police, then deported to Puerto Rico where he was apprehended by the FBI. Wasilewski was sent back to Chicago and charged with embezzlement in violation of 18 U.S.C. § 656. He entered a guilty plea on February 10, 2012.

## II. Abuse of Trust Enhancement

Section 3B1.3 provides for a two-level increase if the defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense . . . ." The district court's interpretation of § 3B1.3 is subject to de novo review, but its factual findings are entitled to deference unless clearly erroneous. *United States v. Fuchs*, 635 F.3d 929, 933 (7th Cir. 2011). We agree with the district court that Wasilewski occupied a position of private trust at Chase Bank, which he abused in a manner that helped him facilitate and conceal his theft.

A "position of public or private trust" is "characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)." U.S.S.G. § 3B1.3, n.1. As the district court recognized, Wasilewski's formal job title—vice-president and assistant branch manager—is important, but not dispositive. Courts should "look beyond labels, to the nature of the position the defendant is in and the responsibilities entrusted to him." *United States v. Fife*, 471 F.3d 750, 753 (7th Cir. 2006). Accordingly, this court has found the enhancement applicable to a wide variety of positions, including an office manager, *United States v. Cruz*, 317 F.3d 763, 765 (7th Cir. 2003), a mayor's special assistant, *Fife*, 471 F.3d at 751, the elected chairman of a Democratic precinct committee, *United States v. Thomas*, 510 F.3d 714, 717 (7th Cir. 2007), and a hotel clerk, *United States v. Tiojanco*, 286 F.3d 1019, 1019-20 (7th Cir. 2002). No matter the label, a position of trust

"carries with it an assumption that the person entrusted with the position will act in accordance with the law." *Thomas*, 510 F.3d at 725.

Chase Bank entrusted Wasilewski with access to large sums of money and the responsibility for keeping that money safe and secure. It was his job to account for all of the money in the vault and the TCDs. Wasilewski argues that he was not given greater access to money than an ordinary bank teller because he could not open a TCD without another employee's code. Wasilewski's argument ignores all the other things that allowed him to steal from the bank, including keys to the bank and PIN codes to deactivate alarms. Wasilewski needed another TCD code, but once he had it, he was able to enter the bank in the middle of the night, steal the money, and leave on a trip the next morning before anyone knew the money was gone. While the abuse of trust enhancement "does not apply in the case of an embezzlement or theft by an ordinary bank teller," U.S.S.G. § 3B1.3, n.1, Wasilewski had far more responsibility than an ordinary bank teller.

Many of this court's abuse of trust cases involve employees who are charged with "deciding, on a case-by-case basis, whether a particular expenditure or transfer of company funds or other valuables is necessary or beneficial to the organization." *Tiojanco*, 286 F.3d at 1021. Accordingly, the enhancement applied to the hotel clerk in *Tiojanco* because he was given "primary responsibility for issuing well over $50,000 in customer refunds each year," *id.* at 1022, and to the office manager in *Cruz*

whose position "required her to draft checks to pay company expenses." 317 F.3d at 765. *See also United States v. Anderson*, 259 F.3d 853, 863 (7th Cir. 2001) (enhancement applied to assistant branch manager who "had the authority to withdraw funds from TCF accounts in amounts over $1,000 without obtaining a supervisor's permission"); *United States v. Hernandez*, 231 F.3d 1087, 1088-89 (7th Cir. 2000) (enhancement applied to staff accountant whose duties included "calculating Zenith's sales and use tax liabilities for jurisdictions across the country and preparing check request forms that authorized the Payables Department to generate payment checks"); *United States v. Deal*, 147 F.3d 562, 563 (7th Cir. 1998) (applying enhancement to shopping center comptroller who "approved invoices for payment"). However, the enhancement is not limited to situations where the defendant is given the authority to transfer funds or authorize expenditures. Wasilewski still had "access and authority over valuable things," even if he was not authorized to disburse money or transfer money between accounts. *Hernandez*, 231 F.3d at 1090. A defendant's "authority over the victim's valuables and the degree of discretion given to the defendant by the victim are simply indicia of the victim's special trust and reliance, and *that* is the common thread in these decisions." *Fuchs*, 635 F.3d at 935 (emphasis in original). By giving Wasilewski unfettered access to the bank and control over its security measures, Chase Bank placed "more than the ordinary degree of reliance on [Wasilewski's] integrity and honesty." *Id.* The enhancement was justified on that basis.

Finally, Wasilewski argues that because he was captured so soon after the theft, his position did not make the crime more difficult to detect. As explained in *Deal*, the fact that a defendant is "able to steal so much and escape detection for so long is evidence . . . that he had a position of trust in which he could get away with more money and for a longer time than a hotel clerk or a bank teller would be likely to be able to do." 147 F.3d at 564. However, Wasilewski's immediate capture due to an alert customs agent does not prove the opposite proposition. If anything, Wasilewski's position of trust enabled him to get away with the theft long enough to flee the country with a bag of cash. An ordinary bank teller could not have stolen money when the bank was closed and no one else was present.

### III.  Sentencing Procedure

A sentencing court commits procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *United States v. Hill*, 645 F.3d 900, 905 (7th Cir. 2011) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Aside from the abuse of trust issue, Wasilewski does not quarrel with the district court's calculation of his guideline range (12 to 18 months). Instead, Wasilewski argues that the district court committed procedural error by treating the guideline range as mandatory.

The district court prefaced its sentencing decision with the following comments:

> One of the sentences available here would be a sentence of imprisonment that includes a term of supervised release with a condition that substitutes home confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment. And also the possibility that if home confinement is ordered, that the judgment order would include a period of home detention, which would include the wearing of an electronic device.

Sentencing Transcript at 30.

Here, the district court was referring to U.S.S.G. § 5C1.1(d)(2),[1] which provides that a sentence can be split between prison and home confinement. The court continued: "Would the law be satisfied, from the probation officer's position, if the Court imposed a sentence of 12 months, and a term of supervised release with a condition that substitutes home detention of at least one-half of the minimum term?" Sent. Tr. at 30. In

---

[1] "If the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by—(1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment."

response, the probation officer confirmed the court's understanding that the "initial commitment" would be for six months to the Bureau of Prisons. *Id.* at 30-31.

Later, after announcing Wasilewski's sentence, the district court stated:

> with respect to those six months in the Bureau of Prisons, this is not a case that necessarily cries out for six months behind steel bars. The Bureau of Prisons has the ability to make an appropriate placement with respect to persons that have been committed to them as the Bureau of Prisons. It may well be that the defendant may spend that six months behind bars, so to speak, or it may well be that the placement would be in some lesser form under different circumstances. But in order to satisfy the law in the first instance, the commitment is to the Bureau of Prisons.

*Id.* at 35-36.

Viewing these comments in their proper context, we are easily convinced that the district court did not treat the guidelines as mandatory. The district court's statement that this case does not "cr[y] out for six months behind steel bars" was made after the district court pronounced its sentence, and it was simply a prediction that Wasilewski would be placed in a low- to medium-security setting by the Bureau of Prisons. 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment"). Moreover, the district court's reference to "the law be[ing] satisfied" by a split sentence under § 5C1.1(d)(2) does not reflect an

assumption that prison is required in the first instance. Rather, the district court explained that a split sentence is "one of the sentences available," then sought clarification from the probation officer regarding how such a sentence would be executed with respect to the Bureau of Prisons.

The district court considered all of the relevant factors under § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to provide just punishment and adequate deterrence. After considering these factors, the district court decided to impose a 12-month sentence, evenly split between prison and home confinement. There is nothing to suggest that it did so reluctantly.

## IV. Conclusion

The district court correctly calculated Wasilewski's guideline range and treated that range as advisory, not mandatory. Therefore, Wasilewski's sentence is AFFIRMED.