Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports.  Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 6, 2006         Decided December 19, 2006

No. 05-3058

UNITED STATES OF AMERICA,
APPELLEE

v.

GUIDEL OLIVARES,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00355-07)

---

*Andrew J. Delehanty*, appointed by the court, argued the cause and filed the briefs for appellant.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese, III* and *Barbara E. Kittay*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, and ROGERS and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Guidel Olivares appeals the judgment of conviction on the ground that the district court erred in denying his request for a downward adjustment of four levels under Sentencing Guidelines § 3B1.2 because of his minimal role in the charged conspiracy and in denying a downward departure of six months because he was an alien facing deportation. Upon examining our standard of review under an advisory sentencing Guidelines scheme, we find neither legal error nor grounds to conclude that the sentence was otherwise unreasonable. Accordingly, we affirm.

**I.**

Olivares and others were indicted in connection with a series of bank robberies in 2004.[1] He pleaded guilty to

---

[1] The government proffered evidence of six bank robberies: (1) January 22nd at the Bank of America in the 5900 block of Blair Road, N.W.: The robbers were armed with assault rifles and stole ("netted") over $144,000. (2) March 5th at Riggs Bank in the 7600 block of Georgia Avenue, N.W.: Armed with an assault rifle and pistols, the robbers netted over $92,000. (3) May 10th at the Chevy Chase Bank in the 3600 block of St. Barnabas Road in Temple Hills, Maryland: The robbers were armed with assault rifles and netted $54,000. One of the robbers who was acting as a lookout outside of the bank fired his assault rifle at a Prince Georges County police officer who entered the bank's parking lot. (4) May 27th at the Chevy Chase Bank at 5823 Eastern Avenue, Chillum, Maryland: Armed with assault rifles, the robbers netted over $18,000. (5) June 12th at the Industrial Bank at 2012 Rhode Island Avenue, N.E.: Inside the bank, one of the robbers seized a security officer's .38 caliber revolver and

conspiracy to commit armed bank robbery, 18 U.S.C. § 371. Although there was no evidence that Olivares was present at any of the bank robberies or related shootings, the proffered evidence showed that on April 23, two of the bank robbers shot two men with a Taurus handgun and a Glock 19 handgun that they had purchased from Olivares. Further, after the June 29 robbery, three of the robbers "stashed" their gear and money at Olivares' apartment on Sherman Avenue in Northwest Washington, D.C. Olivares accepted money for keeping two suitcases. During the execution of a search warrant at Olivares' apartment, officers recovered money from the bank robberies, four AK-47 assault rifles, an AR-15 rifle receiver, an AR-15 assault rifle, three Glock handguns, three INTRATEC TEC-9 semi-automatic assault weapons, a MAC-9 firearm, a MAC-90 assault rifle, a Beretta handgun, two Cobray-11 handguns, and various magazines, barrels, and ammunition. All of the items belonged to the robbers and had been used in connection with the bank robberies.

The district court sentenced Olivares to imprisonment for fifty-seven months, followed by three years of supervised release, and payment of $23,000 in restitution. The Guidelines range was fifty-one to sixty-three months. This was based on the finding that Olivares' base level offense was twenty; the addition of ten points: (1) two points because the property of a financial institution was taken, (2) seven points because a weapon was discharged in the course of the offense, and (3) one point because the loss exceeded $10,000; and the subtraction of three points each because of Olivares' acceptance of

---

fired a round of ammunition at the bank's vault in an unsuccessful attempt to acquire access; still, the robbers netted over $30,000 from bank tellers. (6) June 29th at the SunTrust Bank at 5000 Connecticut Avenue, N.W.: Inside the bank one of the robbers fired two rounds of ammunition into the ceiling; they netted over $23,000.

responsibility and because of his relatively minimal role in the conspiracy. The district court rejected Olivares' requests for a four-point downward adjustment for his role in the offense as a "minimal participant" and for a six-month downward departure as a deportable alien. The total offense level was twenty-seven and Olivares had a criminal history category of I.

**II.**

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines advisory and instructed appellate courts to review sentences for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). *Id*. at 244-45, 260-61. Accordingly, under a post-*Booker* framework for reviewing the reasonableness of sentences, the court has adopted what amounts to a two-step process. First, the court determines whether there was legal error. "[A] sentence would not be 'reasonable,' regardless of length, if legal errors, properly to be considered on appeal, led to its imposition." *United States v. Price*, 409 F.3d 436, 442 (D.C. Cir. 2005) (citation omitted). Legal error encompasses not only incorrect legal interpretations of the Guidelines, but also incorrect applications of the Guidelines to the facts. *Id.* at 442-45. Second, in the absence of legal error, the court reviews the overall reasonableness of the district court's sentence "to ensure that it is reasonable in light of the sentencing factors that Congress specified in [] § 3553(a)." *Id.* at 442 (citing *Booker*, 543 U.S. at 260-64); *see also United States v. Dorcely*, 454 F.3d 366, 373 (D.C. Cir. 2006) (and cases cited). "These factors include, among others, the nature of the offense, the defendant's history, the need for the sentence to promote adequate deterrence and to provide the defendant with needed educational or vocational training, any pertinent policy statements issued by the Sentencing Commission, the need to avoid unwarranted sentencing disparities among similarly situated defendants, and

the need to provide restitution to any victims." *Price*, 409 F.3d at 442 (citing 18 U.S.C. § 3553(a)).

Olivares appeals the denial of a four-point downward adjustment and of a six-month downward departure on the ground of district court error. Because his claims of error are based on the facts before the district court at sentencing, we understand his claim to be, ultimately, that his sentence was unreasonable. We address our standard of review for each of his claims of error[2] and then address the reasonableness of his sentence.

**A.**

Prior to the Supreme Court's decision in *Booker*, 543 U.S. 220, this court reviewed the district court's application of the Guidelines to the facts under a due deference standard and would accordingly have reviewed the district court's three-point downward adjustment for Olivares' role in the offense under this standard. *See, e.g.*, *United States v. Mellen*, 393 F.3d 175, 183 (D.C. Cir. 2004) (citing 18 U.S.C. § 3742(e)). In *Booker*, the Supreme Court struck 18 U.S.C. § 3742(e) as violative of the Sixth Amendment right to a trial by jury and instructed that sentences shall be reviewed for reasonableness. *Booker*, 543 U.S. at 244-45, 260-61. This court noted the issue of whether our pre-*Booker* precedent continues to control in *United States v. Tabron*, 437 F.3d 63, 65 (D.C. Cir. 2006), but had no occasion to address the issue as the sole claim was that in ascribing the weapon possession to the defendant as relevant conduct, the district court erred as a matter of law, *id*. at 65-66.

---

[2] By order of September 29, 2006, the court directed the parties to address how the court should review a sentencing judge's discretionary decision not to depart downward from a properly calculated sentencing Guidelines range.

A number of circuit courts of appeal have continued after *Booker* to apply the pre-*Booker* due deference standard of review to the district court's application of the Guidelines to the facts. *See, e.g.*, *United States v. Clay*, 176 F. App'x 360, 362 (4th Cir. 2006); *United States v. Ledesma*, 160 F. App'x 183, 185 n.1 (3d Cir. 2005) (citing *United States v. Thomas*, 327 F.3d 253, 255 (3d Cir. 2003)); *United States v. Rowe*, 159 F. App'x 693, 696 (6th Cir. 2005); *United States v. Agudelo*, 414 F.3d 345, 348 (2d Cir. 2005) (citing *United States v. Lincecum*, 220 F.3d 77, 80 (2d Cir. 2000)); *United States v. Iacullo*, 140 F. App'x 94, 96 (11th Cir. 2005); *United States v. Doe*, 398 F.3d 1254, 1257 (10th Cir. 2005). The few circuit courts of appeal that applied a de novo or abuse of discretion standard prior to *Booker* have also continued to apply these standards after *Booker*. *See, e.g.*, *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005)[3] (citing *United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir. 1997)); *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005)[4]; *United States v. Turner*, 400 F.3d 491,

---

[3] Ninth Circuit precedent is not entirely consistent with regard to the standard of review. Although most cases have reviewed the district court's application of the Guidelines to the facts for abuse of discretion, a few cases have applied a de novo standard of review. *See United States v. Williamson*, 439 F.3d 1125, 1137 n.12 (9th Cir. 2006).

[4] Although in *Villegas*, the Fifth Circuit asserted that "[i]t is beyond question that before *Booker*, this court would have reviewed the district court's interpretation and application of the Guidelines de novo," 404 F.3d at 359, its precedent prior to *Booker* is less clear. *See, e.g.*, *United States v. Sotelo*, 97 F.3d 782, 799 (5th Cir. 1996) ("This Court shall accept the trial court's findings of fact during sentencing unless they are clearly erroneous and shall give due deference to the district court's application of the Sentencing Guidelines to the facts."). In any event, any change in the law does not appear to have occurred in response to *Booker*.

500 (7th Cir. 2005).[5]  As explained by the Eleventh Circuit:

> Although *Booker* established a "reasonableness" standard for the sentence finally imposed on a defendant, the Supreme Court concluded in *Booker* that district courts must still consider the Guidelines in determining a defendant's sentence.  Nothing in *Booker* suggests that a reasonableness standard should govern review of the interpretation and application as advisory of the Guidelines by a district court.

*United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005) (citations omitted).  Similarly, the Fifth Circuit in *Villegas* explained:

> *Booker* left standing all sections of the Sentencing Reform Act other than §§ 3553(b)(1) and 3742(e).  Thus, § 3742(a) still remains in force, providing that "[a] defendant may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence . . . was imposed as a result of an incorrect application of the sentencing guidelines."  Moreover, § 3742(f) still provides: "If the court of appeals determines that . . . the sentence was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers

---

[5]  Seventh Circuit precedent is not entirely clear with regard to the standard of review prior to *Booker*.  *See, e.g.*, *United States v. Parolin*, 239 F.3d 922, 928 (7th Cir. 2001) ("In the sentencing context . . . the district court's application of the Sentencing Guidelines to the facts is afforded due deference.").  Any change in the law, however, does not appear to have occurred as a result of *Booker*.

appropriate." The survival of these provisions further counsels that we maintain our review of the district court's interpretation . . . .

404 F.3d at 361-62 (first two omissions in original) (internal citations omitted).

We need not decide whether our due deference standard, *see Mellen*, 393 F.3d at 183, survives excision of 18 U.S.C. § 3742(e), because Olivares fails to show legal error. *Cf. Tabron*, 437 F.3d at 65-66. Olivares does not deny what the evidence shows regarding his participation in the conspiracy or his admissions to the district court during the FED. R. CRIM. P. 11 colloquy. Nevertheless, in challenging the district court's denial of a full four-point downward adjustment as error, Olivares contends that his "participation could hardly be less." Appellant's Br. at 7.

The district court noted Olivares' acts of selling two guns to the robbers and of agreeing to store weapons used in the bank robberies at his apartment. The court reasoned that while Olivares had a "more confined role than some of the other conspirators," his acts were nonetheless "very important roles" in the overall conspiracy because he directly "facilitated" the conspiracy's goals, including trying to kill a person whom the conspirators suspected of stealing one of their weapons and making sure that the robbers did not get caught.

The district court further noted Olivares' admission during the plea colloquy that he knew the weapons hidden at his apartment had been used in bank robberies. The district court took into account that although Olivares may not have known that the guns that he sold to his co-conspirators would be used to shoot the person who was suspected of stealing weapons, "he certainly was aware that he was providing two illegal weapons

for illegal use," and that although he may have lacked knowledge of the scope of the conspiracy before he agreed to keep the weapons, when he agreed to store them, he knew that the weapons had been used in bank robberies. The district court reasoned that:

> [I]n terms of his role it would appear if you compare it to the others which is part of the process here that in terms of his knowledge and his role that it's a much more discreet role although serious. * * * I think he's more than a minor [participant]. . . . I would not see him in the usual role as the minimal participant that would be comparable here. But I do think because he didn't have the full knowledge of what was happening that he's entitled to more than a minor [participant adjustment], so I'll give him [a] three points adjustment in terms of his role.

Assuming the due deference standard would apply, given the district court's acknowledgment of Olivares' lack of full participation and of full knowledge of his co-conspirators' activities, there is no basis on which this court can conclude that the district court's ruling on the § 3B1.2 request is not entitled to due deference. In any event, Olivares can point to no legal error underlying the district court's ruling. Its factual findings are not clearly erroneous and its reasoning addresses the pertinent considerations presented by his request and the evidence before the court.

**B.**

Prior to *Booker*, this court held that a district court's denial of a downward departure was unreviewable if the record showed that the district court understood that it, in fact, had authority to depart downward. *See United States v. Pinnick*, 47 F.3d 434, 439 (D.C. Cir. 1995). After *Booker*, some courts of

appeal have continued to apply their analogous pre-*Booker* standards of review to discretionary downward departures. *See, e.g.*, *United States v. Cooper*, 437 F.3d 324, 333 (3d Cir. 2006); *United States v. Winingear*, 422 F.3d 1241, 1245-46 (11th Cir. 2005); *United States v. Puckett*, 422 F.3d 340, 344-45 (6th Cir. 2005); *United States v. Frokjer*, 415 F.3d 865, 874-75 (8th Cir. 2005); *United States v. Burdi*, 414 F.3d 216, 220 (1st Cir. 2005); *United States v. Sierra-Castillo*, 405 F.3d 932, 936 (10th Cir. 2005).

As explained by the Third Circuit in *Cooper*, its pre-*Booker* rule was based on the fact that 18 U.S.C. § 3742(a)-(b), which set forth the circumstances in which a defendant may appeal a sentence, did not authorize an appeal from a discretionary refusal to depart and thereby indicated that Congress intended to foreclose review. *Cooper*, 437 F.3d at 333 (citing *United States v. Denardi*, 892 F.2d 269, 271-72 (3d Cir. 1989)). Because *Booker* left § 3742(a)-(b) intact, *id.* (citing *Booker*, 543 U.S. at 260), the court concluded that "*Booker* does not compel us to reverse [our] precedent" with regard to review of denials of downward departures, *id*. The Tenth Circuit similarly explained that because *Booker* preserved § 3742(a), this court "continues to have the same jurisdiction to review Guidelines sentences as it had before" *Booker. Sierra-Castillo*, 405 F.3d at 936 n.3. Other circuits have advanced similar rationales. *See Winingear*, 422 F.3d at 1245-46; *Frokjer*, 415 F.3d at 874-75. The Tenth and the Eighth Circuits have concluded that in a post-*Booker* world although the district court's refusal to depart is unreviewable, the sentence itself remains subject to review for reasonableness. *See, e.g.*, *United States v. Chavez-Diaz*, 444 F.3d 1223, 1227-30 (10th Cir. 2006); *Frokjer*, 415 F.3d at 874-76.

By contrast, the Seventh and Ninth Circuits have adopted a different approach based on the conclusion that "the concept

of a discretionary departure . . . 'has been rendered obsolete in the post-*Booker* world.'" *United States v. Vaughn*, 433 F.3d 917, 923-24 (7th Cir. 2006) (quoting *United States v. Arnaout*, 431 F.3d 994, 1003 (7th Cir. 2005)). In *Vaughn*, the Seventh Circuit concluded that an advisory Guidelines sentencing scheme brings discretionary departures under *Booker* reasonableness review. *See id.* The Seventh Circuit reasoned that "what is at stake is the reasonableness of the sentence, not the correctness of the departures as measured against pre-*Booker* decisions that cabined the discretion of sentencing courts to depart from guidelines that were then mandatory." *Id.* (internal quotation marks omitted). Hence, under *Booker*'s requirement that sentences be reviewed for reasonableness in light of the factors in § 3553(a), "the district court's refusal to depart from the advisory sentencing range" must be scrutinized as part of that review. *Id.* at 924. The Ninth Circuit adopted the Seventh Circuit's approach in *United States v. Mohamed*, 459 F.3d 979, 986-87 (9th Cir. 2006).[6]

---

[6] The Ninth Circuit stated:

> We think the better view is to treat the scheme of downward and upward "departures" as essentially replaced by the requirement that judges impose a "reasonable" sentence. The discretion that the district court judge employs in determining a reasonable sentence will necessarily take into consideration many of the factors enumerated in Section 5K of the Sentencing Guidelines, but to require two exercises — one to calculate what departure would be allowable under the old mandatory scheme and then to go through much the same exercise to arrive at a reasonable sentence — is redundant. In addition, the use and review of post-*Booker* departures would result in wasted time and resources in the courts of appeal, with little or no effect on sentencing

The Seventh Circuit subsequently applied *Vaughn* to a review of a denial of a discretionary downward departure: "Until recently we refused to address arguments by criminal defendants who sought below-Guideline sentences, at least when district judges recognized their authority to depart. [*Booker*,] which abolished 'departures' by making the Guidelines advisory, abolished this rule too." *United States v.*

---

decisions. After all, if a district court were to employ a post-*Booker* "departure" improperly, the sentencing judge still would be free on remand to impose exactly the same sentence by exercising his discretion under the now-advisory guidelines. Such a sentence would then be reviewed for reasonableness, in which case it is the review for reasonableness, and not the validity of the so-called departure, that determines whether the sentence stands. Further, even if a district court judge were to misapply a departure, this error would still be subject to harmless error review. Presumably, this court would then review the sentence for reasonableness to determine whether the improper departure was harmless. If we were to declare the sentence reasonable, then the erroneous departure would be harmless. If we were to declare the sentence unreasonable, then the sentence would be invalid both because of the erroneous departure *and because it is unreasonable*. In any case, our review of the so-called departure would have little or no independent value.

For these reasons, we side with the Seventh Circuit and we elect to review the district court's application of the advisory sentencing guidelines only insofar as they do not involve departures.

*Mohamed*, 459 F.3d at 986-87 (citations omitted).

*Boscarino*, 437 F.3d 634, 637 (7th Cir. 2006) (citations omitted) (citing *Vaughn*, 433 F.3d 917). Noting its pre-*Booker* reasoning "that a request for a below-guideline sentence did not fit any of the categories in 18 U.S.C. § 3742(a), which authorizes appellate review of sentences at defendants' behest," the court concluded that "[a]fter *Booker* . . . an 'unreasonable' sentence is an unlawful sentence, and § 3742(a)(1) authorizes the correction of any illegal sentence." *Id.* "Because sentences within the Guideline range are presumptively but not conclusively reasonable," the court stated, "we are authorized to entertain contentions that a particular Guideline sentence is unreasonably high." *Id.*; *see also United States v. Lacy*, 165 F. App'x 475, 477 (7th Cir. 2006) (quoting *Vaughn*, 433 F.3d at 924).

Whether this court applies its pre-*Booker* precedent or embraces the approach of the Seventh and Ninth Circuits, Olivares' contentions fail. He requested a six-month downward departure because he was an alien subject to deportation. In *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), this court held that "a downward departure may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence." *Id.* at 655-56. The court emphasized, however, that a finding that an individual's deportable alien status would likely "lead to worse conditions" was insufficient to justify a departure. *Id.* at 655. Instead, a court should only depart if it is "persuaded that the greater severity is undeserved." *Id.*

Under our pre-*Booker* precedent, this court held that the district court's denial of a discretionary downward departure is only reviewable if the court's denial "rests on a 'misconstruction of its authority to depart.'" *Pinnick*, 47 F.3d at 439 (quoting *United States v. Lopez*, 938 F.2d 1293, 1296 (D.C. Cir. 1991)); *see also United States v. Stewart*, 104 F.3d

1377, 1392 (D.C. Cir. 1997). The record shows that the district court was aware of its authority to depart and declined to do so. Under *Pinnick*, our review for legal error is at an end.

Olivares contends that there was cause for a *Smith* departure, and that in light of the district court's unclear ruling a remand is required for further explanation. The district court explained, however, that "I did not grant [] a *Smith* departure *per se*. I gave [Olivares] what I thought was an appropriate sentence." On appeal, Olivares focuses on the district court's use of "*per se*" as implying that some departure was given that was related to *Smith*. He contends that it is unclear how it was related, observing that "[t]he record should be clearer." Appellant's Br. at 14 (citing *In re Sealed Case*, 199 F.3d 488, 491 (D.C. Cir. 1999)). We find no lack of clarity as would require a remand. Because the district court recognized its authority to depart under *Smith*, the district court's decision not to depart is unreviewable, *see Pinnick*, 47 F.3d at 439, except as Olivares' sentence is reviewable for reasonableness.

**C.**

Finally, the combined impact on Olivares' sentence of the denial of his request for a four-point downward adjustment for his minor role and for a downward departure does not render his sentence unreasonable. Olivares' sentence was in the middle of the Guidelines sentencing range, *see* 18 U.S.C. § 3553(a)(4), and thereby presumptively reasonable, *see Dorcely*, 454 F.3d at 376, based on the district court's consideration of other relevant factors under § 3553(a). Olivares, in fact, received three-fourths of the downward adjustment that he requested in view of the nature of his participation in the conspiratorial scheme. He points to no basis on which this court could conclude that the district court failed to consider a relevant factor under § 3553(a). *See United States v. Ayers*, 428 F.3d 312, 314-15 (D.C. Cir. 2005).

Indeed, the district court's explanation for its denial of a full four-point downward adjustment establishes the basis on which to conclude that the sentence was reasonable. In view of Olivares' role, *see* 18 U.S.C. § 3553(a)(1), and the nature and seriousness of the conspiracy, *see id.* § 3553(a)(1), (2)(A), the district court granted him most of the benefit of his first (minor role) request and effectively afforded him some of the benefit of his second (*Smith*) request. Olivares points to nothing from which this court could conclude that his sentence is unreasonable because the district court did not depart downward six months. The instruction in *Smith* is that alien status is not alone a basis for a lesser sentence and the departures in *United States v. Gomez*, 431 F.3d 818 (D.C. Cir. 2005), and *United States v. White*, 71 F.3d 920 (D.C. Cir. 1995), on which Olivares relies, were based on sentencing considerations not present here. Although Olivares seeks to diminish his participation in the conspiracy, we affirm in light of the district court's reasoned evaluation of his actions, his admitted knowledge with regard to the likely violent nature of the conspiracy, and the general goal of the Guidelines themselves. *See* 18 U.S.C. § 3553(a)(1), (2), (4), (6).