# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 5, 2008          Decided July 11, 2008

No. 06-3134

UNITED STATES OF AMERICA,
APPELLEE

v.

GWENDOLYN TANN,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00392-01)

*Dennis M. Hart*, appointed by the court, argued the cause and filed the brief for appellant.

*Stratton C. Strand*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese, III*, *Elizabeth Trosman*, and *Timothy G. Lynch*, Assistant U.S. Attorneys.

Before: GINSBURG, ROGERS, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GINSBURG.

GINSBURG, *Circuit Judge*: Gwendolyn Tann was convicted of fraud and sentenced to 40 months in prison for embezzling thousands of dollars from three different employers. We affirm her conviction but remand for resentencing because the district court erred in concluding Tann occupied a "position of trust" as that term is defined in the United States Sentencing Guidelines.

## I. Background

In May 1998, Tann was hired as the office manager of the D.C. Center for Independent Living (DCCIL), a small non-profit organization.[*] Her duties included "hiring, ordering equipment, scheduling travel, ... [and] managing the expenditures[] and checks that were written." She maintained the organization's check ledger, but was not authorized to write checks on behalf of the organization.

In May or June of 1999, Jody Wildy, the Executive Director of the DCCIL, noticed that some of its cancelled checks did not match the descriptions in the ledger. After performing an audit, she discovered several checks made out to Tann and bearing Wildy's forged signature. In July 1999, she confronted Tann, who responded by not returning to work. An investigation later revealed that Tann, while at the DCCIL, had deposited $21,134.85 in unauthorized checks into her bank account. She spent the money primarily on clothing.

In 2001 Tann became the secretary for three small construction companies: Utility Construction, Atlantic Demolition, and Atlantic Craftsman, at a salary of $660 per week. Her duties included "handl[ing] cost records, ma[king] out the payroll checks, d[oing] the payroll." She was not

---

[*]We "[v]iew[] the evidence in the light most favorable to the Government." *Evans v. United States*, 504 U.S. 255, 257 (1992).

authorized to write checks on behalf of any of the companies. Nevertheless, between January 1 and April 17, 2001 Tann deposited into her bank account checks totaling $40,163.42, each bearing the forged signature of Kenneth Swecker, a corporate officer of two of the construction companies. She spent much of that money on Internet gambling.

Tann later took a job with another non-profit organization, Generations, where she started work in November 2002 as the office and grant manager.[*] At Generations her duties included preparing checks for the signature of Donna Butts, the Executive Director, maintaining the computerized check ledger, and ensuring monthly bank statements matched the ledger. In May 2003, when Butts became concerned about errors in the computerized checking system, Tann resigned. After investigating, Butts discovered Tann had deposited into her own account several checks bearing Butts' forged signature, some dating back to January 2003. In all Tann took $23,833.78 from Generations. Meanwhile, she continued to spend heavily on Internet gambling.

In August 2004 Tann was indicted on 18 counts (one for each forged check) of bank fraud, in violation of 18 U.S.C. § 1344; one count of wire fraud, in violation of 18 U.S.C. § 1343; and one count of fraud in violation of the law of the District of Columbia. A jury found her guilty on all counts. Pursuant to the United States Sentencing Guidelines, the district court enhanced her sentencing range by two levels on the ground that her offenses involved abuse of a position of trust. *See* UNITED

---

[*]She applied for the job by faxing her resume, which made no mention of her employment with the construction companies. This fax, which she sent from Virginia to Washington, DC, was later used to support the element of interstate communication necessary to convict Tann of wire fraud.

STATES SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 3B1.3. The court sentenced Tann to 40 months in prison: 30 months on each of the 19 federal counts, to run concurrently, and 10 months on the D.C. count, to run consecutively.

## II. Analysis

Tann raises three challenges on appeal. First, she argues the district court erred in admitting the forged checks into evidence. Second, she contends there was insufficient evidence to support her conviction for wire fraud. Third, she challenges the district court's enhancement of her sentence for abusing a position of trust.

## A. Admission of Forged Checks

The district court accepted into evidence copies of the 18 forged checks that formed the basis for Tann's conviction on the 18 counts of bank fraud. Each check instructs the bank to pay money from the account of her employer "to the order of Gwendolyn Tann." Tann contends those statements are inadmissible hearsay evidence.

Tann did not, however, make this argument at trial; indeed her lawyer repeatedly agreed in the district court that the forged checks were admissible.[*] In its written opinion, the district court expressly noted Tann had not objected to the admission of the forged checks. 425 F. Supp. 2d 26, 28-29 (2006).

---

[*]*See* 2/27/06 Tr. at 7 ("[COUNSEL]: I have to say I was ... persuaded ... that ... the employer's checks ... are not being offered to prove the truth ... o[f] the fraud"); *id.* at 18 ("THE COURT: ... [T]he employer's checks, in terms of their being [admissible], I'm assuming that you're not disputing that .... [COUNSEL]: That's correct").

5

Ordinarily an objection not made in the district court is reviewable on appeal only for plain error.  *See* FED. R. CRIM. P. 52(b); *United States v. Weaver*, 281 F.3d 228, 232 (D.C. Cir. 2002) ("Plain error assumes that the court should have intervened *sua sponte* because the error was so obvious").  In this instance, however, the Government contends the objection may not be reviewed at all because Tann's lawyer agreed the checks were admissible; that is, the objection was not merely forfeit but waived.  *See United States v. Olano*, 507 U.S. 725, 733 ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right" (internal quotation marks omitted)); *Weaver*, 281 F.3d at 232 ("When defense counsel has informed the court that he has no problem with admitting the evidence, it may be too much to expect the trial court to second-guess defense counsel's position"); *see also United States v. Stearns*, 387 F.3d 104, 108 (1st Cir. 2004) ("Although we can review forfeited error for plain error, arguments which have been affirmatively waived are not normally reviewable on appeal").  In this case, however, the statements made by Tann's lawyer, reviewed in context, could be understood as merely acquiescing in rather than inviting the district court's decision to admit the evidence, and hence a forfeiture rather than a waiver.  *Cf. In re Sealed Case*, 108 F.3d 372, 373-74 (D.C. Cir. 1997).

Assuming without deciding the objection was forfeit rather than waived, we conclude there was no plain error in the admission of the checks.  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c).  Here the checks were not admitted to prove the truth of any statement asserted thereon.  Rather, the Government offered the checks only to prove they had been created by Tann.  It proved through other evidence that the

checks were forged.  *See Anderson v. United States*, 417 U.S. 211, 219-20 (1974) (holding evidence not inadmissible hearsay because admitted "to prove that the statements were made so as to establish a foundation for later showing ... they were false" (footnote omitted)).

B. Sufficiency of the Evidence

Tann next contends there was insufficient evidence to convict her of wire fraud.  To prove wire fraud, the Government must show: (1) the defendant "knowingly and willingly entered into a scheme to defraud"; and (2) "an interstate wire communication was used to further the scheme." *United States v. Alston-Graves*, 435 F.3d 331, 337 (D.C. Cir. 2006).

The Government's theory was that (1) Tann had already formed a scheme to defraud Generations when she applied for a position there and (2) the interstate fax of her resume was sent in furtherance of that scheme.  Tann argues the Government did not prove she had "entered a scheme to defraud" when she sent the fax.  According to Tann, no reasonable jury could find she intended to defraud Generations when she sent the fax because there is no evidence she was then aware Generations would have the lax security procedures necessary for her to perpetrate the fraud.

We must affirm a guilty verdict if a reasonable jury could have found the essential elements of the crime beyond a reasonable doubt. *Regalado Cuellar v. United States*, 128 S. Ct. 1994, 2006 (2008).  Here the Government presented more than enough evidence to meet this standard.  When she applied for the position at Generations, Tann had recently defrauded two similarly small organizations while working as their secretary or office manager; almost immediately after she arrived, she began defrauding Generations in the same way she had the others.  In

view of this pattern of conduct, a reasonable jury could infer Tann had the requisite intent to defraud Generations when she faxed it her resume.

C. Sentence Enhancement

The district court enhanced by two Tann's Sentencing Guidelines base offense level in light of its finding that Tann had abused a "position of trust" while working at the DCCIL and at Generations. The court then gave Tann the maximum sentence in the applicable range. Tann challenges the enhancement.

1. Standard of review

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held the United States Sentencing Guidelines violated the Sixth Amendment to the Constitution of the United States because they authorized (and indeed required) the court to enhance a sentence beyond the statutory maximum based upon a fact not found beyond a reasonable doubt by a jury. *Id.* at 244; *see also id.* at 232 ("[T]he 'statutory maximum' ... is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" (internal quotation marks and emphasis omitted)). The Court's remedy was to "make[] the Guidelines ... advisory" in all cases: It "requires a sentencing court to consider Guidelines ranges ... but permits the court to tailor the sentence in light of other statutory concerns as well." *Id.* at 245. In accordance with *Booker* and its sequel, *Gall v. United States*, 128 S. Ct. 586 (2007), our review of a sentence proceeds in two steps:

> [The court] first ensures that the district court committed no significant procedural error, such as ... improperly

calculating[] the Guidelines range ....  Assuming that the district court's sentencing decision is procedurally sound, the ... court ... then consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.

*Id.* at 597; *see also United States v. Olivares*, 473 F.3d 1224, 1226 (D.C. Cir. 2006) ("[Procedural] error encompasses ... incorrect applications of the Guidelines to the facts").

In this case Tann contends the district court committed an error of law in calculating the Guidelines range, rendering the sentence per se unreasonable.  In particular, Tann argues the district court erred by applying the enhancement for abusing a "position of trust" on the facts of her case.  Before reaching the merits of her argument, we consider the standard by which we review a district court's application of the now-advisory Guidelines to the facts of the case.

Prior to *Booker*, appellate review of a sentence was governed by 18 U.S.C. § 3742(e), one provision of which required us to give "due deference to the district court's application of the guidelines to the facts."  We interpreted the "due deference" standard as lying "presumably ... somewhere between *de novo* and 'clearly erroneous.'" *United States v. Kim*, 23 F.3d 513, 517 (D.C. Cir. 1994).  In *Booker*, the Supreme Court held § 3742(e) unconstitutional to the extent it required an appellate court to reverse a sentence that fell outside the mandatory Guidelines range.  543 U.S. at 245.  Since *Booker* we have assumed without deciding that § 3742(e) continued to govern our review in other respects and have given "due deference" to the district court's application of the Guidelines to facts when we determined whether it correctly computed the advisory Guidelines range.  *See United States v. Day*, 524 F.3d 1361, 1367, 1373-74 (2008).  In this case we hold the due

deference standard is still operative.

The "due deference" standard survives *Booker* because that case did "not change[] how the Guidelines range is to be calculated." *United States v. Dorcely*, 454 F.3d 366, 375 n.6 (D.C. Cir. 2006). Accordingly, when we apply the first step of the two-step process outlined in *Gall* and *Olivares*, we do precisely what we did prior to *Booker* -- determine whether the district court correctly calculated the Guidelines range and remand for resentencing if it did not. We therefore see no reason to think *Booker* displaced the congressionally mandated standard of review of a district court's application of the Guidelines to facts. As we noted in *Olivares*, every circuit to have considered the matter has arrived at the same conclusion. 473 F.3d at 1227-28.

2. "Position of trust"

The applicable Guidelines base offense level is enhanced by two if the court finds the defendant "abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. In order to prevent the enhancement from applying to virtually every fraud and theft case, the application note to that provision provides a rather specialized and narrow definition of the phrase "position of trust":

> "[T]rust" refers to a position of ... trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature .... This adjustment, for example, applies in the case of an embezzlement of a client's funds by an attorney

serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment does not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-described factors.

Tann contends she did not occupy a position of trust within the meaning of U.S.S.G. § 3B1.3. She characterizes her position as "ministerial" and argues she was able to commit fraud only because of lax supervision. The Government argues Tann occupied a position of trust because she "exercised significant professional judgment."

We appreciate the care with which the district court reached its decision that Tann occupied a position of trust. Giving due deference to that court's decision in favor of the Government,[*] we are nonetheless constrained to agree with

---

[*]We have not been consistent on the standard of review of a district court's determination whether a defendant occupied a position of trust within the meaning of U.S.S.G. § 3B1.3. *Compare United States v. Day*, 524 F.3d 1361, 1374 (2008), *and United States v. West*, 56 F.3d 216, 219 (1995) (de novo review), *with United States v. Robinson*, 198 F.3d 973, 978 (2000), *United States v. Becraft*, 117 F.3d 1450 (1997), *United States v. Barrett*, 111 F.3d 947, 954 (1997), *and United States v. Broumas*, 69 F.3d 1178, 1180 (1995) (due deference review). We conclude that, insofar as the district court applied the "abuse of trust" Guideline to the facts of Tann's case, due deference is the appropriate standard of review. "A district judge's determination [about] a given set of facts ... will typically not be exactly replicated in any other case. And therefore there is less reason to insist on the uniformity that a question of law typically requires." *Becraft*, 117 F.3d at 1451 n.1 (quoting *United States v. Kim*, 23 F.3d 513, 517 (D.C. Cir. 1994)) (internal quotation marks omitted).

Tann; the facts simply do not support the conclusion that Tann occupied a position of trust as defined in the Guidelines. Tann's responsibilities consisted of preparing checks, entering information into a computerized check ledger, and determining whether the cancelled checks received from her employer's bank matched the information in the ledger. She was able to perpetrate her fraud by forging false checks, entering false information into the ledger, and disposing of cancelled checks she had made payable to herself. All her tasks were clerical in nature; none required her to exercise the type of "professional or managerial discretion" contemplated by the application note to the Guidelines. The district court stated that Tann was "trusted to handle the finances of the organization[s]," but the court neither identified any specific task that required the exercise of professional or managerial discretion nor explained how her exercise of discretion permitted her to perpetrate the fraud.

In reaching its contrary conclusion, the district court emphasized that Tann had access to her employer's blank checks and ledger and was not closely supervised: "There was some supervision but not a great deal.... Ms. Butts was supposed to ... review[] ledgers[, but] didn't do it during this period of time for the most part." The court said her employers believed she occupied a position of trust for precisely -- and solely -- that reason: "[T]he directors of those two organizations ... viewed her position as one of trust because of the access they gave her to the blank checks, the bank statements, cancelled checks, ledgers."

Tann may have occupied a position of trust in the colloquial sense that she was trusted not to use her access for nefarious purposes; in that sense, so is every bank teller who has access to the bank's money and every janitor who cleans an office where desk drawers are left unlocked. Like the bank teller or the janitor, however, Tann did not have a job that required her to

exercise professional or managerial discretion, which is the standard set forth in the application note to the Guideline. As we have said before, to apply the enhancement to a defendant

> merely because he or she is entrusted with valuable things and has little or no supervision while performing his or her duties[] would stretch the abuse-of-trust enhancement to cover endless numbers of jobs involving absolutely no professional or managerial discretion, in clear contravention of the plain language of the commentary to section 3B1.3.

*United States v. West*, 56 F.3d 216, 221 (D.C. Cir. 1995); *accord United States v. Edwards*, 325 F.3d 1184, 1187 (10th Cir. 2003) (employee "trusted by her employer with significant responsibility -- even to the point of allowing her to bypass usual accounting controls and pick up customer checks from incoming mail" did not occupy position of trust because she lacked "authority to make substantial discretionary judgments regarding company revenues or expenses"); *United States v. Helton*, 953 F.2d 867, 870 (4th Cir. 1992) ("[B]eing subject to lax supervision alone does not convert one's job into a 'position of trust'").

Our decision in *United States v. Becraft*, 117 F.3d 1450 (1997), which the Government invokes, is not to the contrary. In that case we affirmed the district court's decision that an office manager who submitted numerous false purchase orders and travel expense reports occupied a position of trust. We based our conclusion upon the district court's findings that the defendant "occupied a trusted supervisory position ... entailing substantial spending and reporting authority" and her supervisor "permitted [her] to determine which purchases should be made and accepted her decision without question." *Id.* at 1452-53. In other words, the defendant exercised managerial discretion -- she decided what to buy for the organization -- and was able to

perpetrate her fraud because her supervisor deferred to her judgment. Here, the fraud did not arise out of the exercise of discretionary judgment in any comparably meaningful sense.

On remand, the district court may conduct additional fact-finding to determine whether Tann occupied a position of trust as defined in the Guidelines. Regardless of its conclusion in that regard, of course, the court retains broad discretion to impose a sentence based upon the factors identified in 18 U.S.C. § 3553(a)(2). The advisory Guidelines range is only one such factor. *See Gall*, 128 S. Ct. at 596-97.

## III. Conclusion

For the foregoing reasons, we affirm Tann's convictions, and remand this case for resentencing.

*So ordered.*