In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1511

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LORI BRADSHAW,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CR 600-1—**Charles P. Kocoras**, *Judge*.

ARGUED NOVEMBER 8, 2011—DECIDED FEBRUARY 22, 2012

Before KANNE, SYKES, and HAMILTON, *Circuit Judges.*

SYKES, *Circuit Judge.*   While serving as an office
manager and executive assistant for a succession of
Chicago-area employers, Lori Bradshaw embezzled more
than $240,000 by making personal purchases on com-
pany credit cards, falsifying reimbursement claims for
business expenses, and depositing corporate checks in
her personal bank account. She pleaded guilty to one
count of wire fraud, *see* 18 U.S.C. § 1343, reserving the

right to challenge at sentencing the government's recommendation of a two-level increase for abuse of a position of trust, *see* U.S.S.G. § 3B1.3. The district court accepted the government's recommendation and applied § 3B1.3, which resulted in an advisory guidelines range of 27 to 33 months. The court imposed a sentence of 27 months. Bradshaw appealed, reiterating her challenge to the abuse-of-trust enhancement. We affirm.

## I. Background

Bradshaw defrauded three Chicago-area employers identified in the indictment and plea agreement as "Company A, Company B, and Company C." From 2004 to 2007, she worked as an executive assistant and office manager at Company A, a nonprofit organization. Her duties included supervising executive assistants, providing administrative support to several staff members, and coordinating purchases from vendors. Company A also tasked Bradshaw with opening its new office in downtown Chicago; Bradshaw was later given an award commending her performance on this assignment.

Company A entrusted Bradshaw with a corporate credit card for business expenses; notably, Bradshaw was not required to submit invoices to the company supporting her purchases. Bradshaw used the corporate credit card to pay for personal items such as clothes, electronics, and gifts. When the company began investigating Bradshaw's transactions, she submitted fake invoices to conceal her theft. Bradshaw charged over $56,000 in personal expenses to her Company A corporate credit card.

From 2007 to 2010, Bradshaw worked as an executive assistant to a vice-president at Company B, a financial-services company. This company also issued Bradshaw a corporate credit card for business purchases, and again Bradshaw used the credit card to buy personal items. Company B required Bradshaw to submit invoices supporting her purchases, so to conceal her theft, Bradshaw again manufactured fake invoices. She also submitted phony reimbursement claims for business expenses unconnected to the corporate credit card. In addition, Company B entrusted Bradshaw with access to her boss's email account; using this access, she fraudulently approved her own invoices. Bradshaw's personal purchases at this company totaled over $170,000.

Company B eventually discovered Bradshaw's misconduct, fired her, and reported the matter to federal law enforcement. Meanwhile, however, Bradshaw obtained a part-time job as an executive assistant at Company C, a manufacturing company. Bradshaw continued her fraudulent activity at this company by stealing corporate checks and using them to deposit money into her personal bank account. By the time her pattern of embezzlement was uncovered, Bradshaw had stolen over $16,000 from Company C.

Bradshaw was indicted on several fraud counts and eventually pleaded guilty to one count of wire fraud pursuant to a plea agreement. Her presentence report ("PSR") recommended that she receive a two-level enhancement pursuant to U.S.S.G. § 3B1.3 for abusing

positions of trust at Company A and Company B.[1] In her plea agreement, Bradshaw reserved the right to contest the § 3B1.3 enhancement. At sentencing she argued that § 3B1.3 applies to fiduciaries, whereas she was merely "a secretary with a fancy title."

The district court disagreed and applied § 3B1.3. In the court's view, Bradshaw's job titles were unimportant; the enhancement was warranted because of the nature of her relationships with superiors and their level of trust in her. Specifically, the court found that: (1) Company A entrusted Bradshaw with opening its Chicago office and gave her a corporate credit card with little oversight, allowing her to perpetrate and conceal her fraud; and (2) Company B granted Bradshaw access to a vice-president's email account, which enabled Bradshaw to approve her own fraudulent invoices. The court then imposed a sentence of 27 months, the bottom of the advisory guidelines range.

## II. Discussion

The sentencing guidelines call for a two-level increase in offense level "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the of-

---

[1] Because the PSR and Bradshaw's plea agreement detailed her conduct at all three companies, the enhancement would apply if she abused a position of trust at any one of them. *See* U.S.S.G. § 1B1.3(a).

fense." U.S.S.G. § 3B1.3. "We review the district court's interpretation of § 3B1.3 de novo and its factual findings for clear error." *United States v. Thomas*, 510 F.3d 714, 725 (7th Cir. 2007). The enhancement applies if Bradshaw: (1) occupied a position of public or private trust; and (2) abused the position of trust to significantly facilitate or conceal the commission of the crime. *Id.*

Only the first element is at issue here. Bradshaw argues that she did not occupy positions of trust because her jobs were not "characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)." U.S.S.G. § 3B1.3 cmt. n.1. Bradshaw compares herself to "an ordinary bank teller or hotel clerk," positions that generally lack the characteristics of discretionary judgment required for application of § 3B1.3. *See id.* Instead, she describes herself as merely "an administrative assistant without significant authority."

We recently clarified, however, that the "common thread" in our decisions upholding application of § 3B1.3 is "the victim's special trust and reliance," noting that "a defendant's authority over the victim's valuables *and the degree of discretion given to the defendant by the victim* are simply indicia of" that trust. *United States v. Fuchs*, 635 F.3d 929, 935 (7th Cir. 2011) (emphasis added). Here, the district court concluded that specific features of the relationship between Bradshaw and her employers warranted the enhancement. Specifically, Company A gave Bradshaw the multi-faceted responsibility of opening its Chicago office and subsequently commended her

No. 11-1511

performance. Moreover, Bradshaw was entrusted with a corporate credit card for business expenses with very little oversight, which facilitated her fraudulent purchases. Company B also gave Bradshaw a corporate credit card, as well as unfettered access to a vice-president's email account, which she used to approve her own false invoices. Considering Bradshaw's job titles alone, this case would fall outside the outer boundaries of § 3B1.3. But the district court's findings about the particular characteristics of her job responsibilities support the conclusion that Bradshaw's employers "placed more than the ordinary degree of reliance on [her] integrity and honesty." *Id.*

Bradshaw's argument resembles the one we rejected in *United States v. Cruz*, 317 F.3d 763 (7th Cir. 2003). In *Cruz* we upheld application of § 3B1.3 to an office manager convicted of bank fraud for forging and cashing false checks in the name of her employer and for misusing her employer's credit card. In so holding, we emphasized that "[e]mployees may hold a position of trust even when they do not occupy upper-level or even supervisory positions." *Id.* at 767; *see also United States v. Tiojanco*, 286 F.3d 1019, 1021-22 (7th Cir. 2002) (hotel clerk occupied position of trust because he had primary responsibility of issuing refunds to customers with limited oversight); *United States v. Hernandez*, 231 F.3d 1087, 1090-91 & n.2 (7th Cir. 2000) (staff accountant occupied position of trust because he had considerable access to employer's tax returns and was trusted by supervisors). Like the employee in *Cruz*, Bradshaw "held a position of limited authority" that she used to "earn[]

the trust of her supervisor[s] . . . so that [they] did not question" the propriety of her purchases. *Cruz*, 317 F.3d at 767.

We return to our standard of review, which requires that we uphold the district court's factual findings unless they are clearly erroneous. Bradshaw's case is close to the outer boundaries of the abuse-of-trust enhancement under § 3B1.3. On this record, it would not have been erroneous not to apply the abuse-of-trust enhancement. In a case as close as this one, these are matters for the district court's judgment, which in any event is not bound by the advisory sentencing guidelines. The district court did not clearly err by applying the abuse-of-trust enhancement. The judgment is AFFIRMED.