NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2018
Decided November 1, 2018

**Before**

DANIEL A. MANION, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-1532

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>  *Plaintiff-Appellee,* <br><br> *v.* <br><br> BETTYE R. KIDD, <br>  *Defendant-Appellant.* | Appeal from the United States District Court for the Eastern District of Wisconsin. <br><br> No. 17-CR-185-1-JPS <br><br> J.P. Stadtmueller, <br> *Judge.* |

**O R D E R**

Bettye Kidd, a lead material handler at a high-end hair products manufacturer, illicitly packaged and shipped products to unauthorized buyers for years before her employer and authorities caught wind of the scheme. Kidd pleaded guilty to transporting stolen goods, and the district court sentenced her below the guidelines range to 18 months in prison. At issue in this appeal is the court's decision to impose a 2-level sentencing enhancement under U.S.S.G. § 3B1.3 because Kidd abused a position of trust. Kidd argues that her position lacked the requisite level of discretion to qualify

as a position of trust. Because there was no clear error in the judge's decision to apply the enhancement, we affirm the judgment.

Kidd, now 57, worked for nearly twenty years for the Andis Company, a family-owned business in Sturtevant, Wisconsin, which manufactures and distributes high-quality hair products. Kidd's position was "lead material handler," responsible for supervising other employees in the shipping department, directing their assignments, and overseeing their work stations in the warehouse. Additionally, she filled customer orders by creating UPS shipping labels and ensuring that the products were correctly packaged and delivered to Andis's customers.

As set forth in her plea agreement, beginning around 2012, Kidd started taking orders from individuals who were not Andis customers and selling Andis products "out the back door." Over a five-year period before her discharge, Kidd pilfered the products from Andis, secretly creating and printing UPS labels, and filling the illicit orders alongside bona fide orders. Then she arranged for UPS to ship the stolen products in the same shipment as the legitimate items but bound for a different destination. Recipients of the stolen goods, in turn, directly paid Kidd or her cohorts in the scheme. By the time the FBI and Andis uncovered the fraud, Kidd had shipped over 1400 packages of Andis's products, causing a loss to the company of over half a million dollars. She was charged with, and pleaded guilty to, transporting stolen goods, *see* 18 U.S.C. § 2314. Of relevance to this appeal, one provision in the plea agreement reflected the parties' acknowledgment that the government would recommend a 2-level sentencing enhancement under U.S.S.G. § 3B1.3 based on Kidd's "abuse of her employer's trust."

The probation officer who prepared the presentence report agreed with the government that a 2-level increase under § 3B1.3 was appropriate. The probation officer accepted the government's assertion that Kidd's position subjected her to less oversight than other warehouse employees; she had private workspace (a cubicle in the office and a workstation in the warehouse) and the "discretion" to fill orders and create shipping labels without approval.

At sentencing, the parties debated whether the guideline should apply to Kidd's circumstances. A 2-level increase to a defendant's offense level is proper "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The commentary to § 3B1.3 defines "position of public or private trust"

as one "characterized by professional or managerial discretion (*i.e.*, substantial discretionary judgment that is ordinarily given considerable deference)." *Id*. at cmt. n.1. Kidd denied holding a position of trust that was characterized by professional or managerial discretion; she said she was not the only employee who worked in the shipping department or who was authorized to ship products, and she maintained that she did not have any special skill that allowed her to facilitate or conceal the offense. The government countered that Kidd was entrusted with the discretion to control assignments and employees' whereabouts within the shipping area and, further, as lead material handler, she had the authority to assign herself to prime locations to facilitate the scheme.

The district court applied the 2-level enhancement, accepted the probation officer's guideline calculations (offense level 19 and criminal history category I, which together yielded a sentencing range of 30 to 37 months), and sentenced Kidd below that range to 18 months. The judge highlighted Kidd's role as lead material handler in which she had "the discretion to assign [] others" and noted that her position allowed her to perpetuate her scheme by directing unwitting subordinates to prepare illicit packages. Andis, the judge explained, was a "very, very close-knit family business," whose principals "reposed in Ms. Kidd a level of trust, a level of responsibility that would not have otherwise allowed this sort of conduct to occur, particularly over a protracted period of time."

On appeal, Kidd contends that the district court wrongly applied § 3B1.3 based on a misunderstanding of the discretionary nature required of the position of trust. She maintains that her job does not fit either of the two types of positions of trust identified by this court as involving the requisite amount of discretion: (1) jobs requiring specialized expertise or (2) jobs empowering the employee to exercise, on a case-by-case basis, significant decision-making to determine whether certain expenditures are necessary or beneficial to the company. *United States v. Tiojanco*, 286 F.3d 1019, 1020–21 (7th Cir. 2002) (surveying cases); *see also United States v. Miller*, 607 F.3d 144, 150 (5th Cir. 2010); *United States v. Sicher*, 576 F.3d 64, 76 (1st Cir. 2009); *United States v. Edwards*, 325 F.3d 1184, 1188 (10th Cir. 2003) (sister circuits endorsing *Tiojanco*'s reasoning). Regarding the latter category, she argues that she did not make complex decisions or determine how best to use Andis's funds.

Our review of a district court's application of § 3B1.3, including its factual finding as to whether a defendant held a position of trust, is highly deferential, *United States v. DeMarco*, 784 F.3d 388, 396 (7th Cir. 2015). Here, the district judge did

not clearly err in applying the enhancement. Relevant to this case, *Tiojanco*'s second category of positions of trust includes employees who provide "initial authorization [for the expenditure of company funds or other valuables] that "for reasons of efficiency is subject only to nominal review." 286 F.3d at 1021. Supervisors of such employees defer to these low-level decision-makers because of their "first-hand knowledge of the relevant facts through personal observation, customer interaction, or document review." *Id*. Over a five-year period, Kidd authorized and arranged for the shipment of company products without management looking over her shoulder. She does not dispute the government's assertion that Andis management deferred to her first-hand knowledge of the inventory when they sought her assistance to solve the shortages after they began noticing inventory discrepancies. Kidd tries to distinguish *Tiojanco* by arguing that she did not have "unfettered authority to spend company money," id., but authority over company money is not dispositive. *See United States v. Fuchs*, 635 F.3d 929, 934–35 (7th Cir. 2011).

The "common thread" in our decisions upholding the application of § 3B1.3 is "the victim's special trust and reliance." *United States v. Bradshaw*, 670 F.3d 768, 770 (7th Cir. 2012) (citing *Fuchs*, 635 F.3d at 935). Like the employer in *Bradshaw*, Andis "placed more than the ordinary degree of reliance on [Kidd's] integrity and honesty." 670 F.3d at 770. As an employee of the company for nearly twenty years, Kidd enjoyed the trust of her superiors to authorize materials for final shipment without further review. Management's request for Kidd to help address the inventory shortages underscores the degree of its reliance and trust in her; this was not an ordinary arms-length, commercial relationship, *see Fuchs*, 635 F.3d at 937, but one built on almost two decades of work within a "very, very close-knit family business."

Moreover, the judge expressly considered Kidd's authority—subject to minimal oversight—to exercise discretion when assigning tasks to other employees. The judge highlighted her ability to direct these employees to assemble products to fulfill illicit orders. The scheme could have continued for so many years, the judge pointed out, only because Andis entrusted her with responsibilities to the degree that it did. The large number of items (1400 packages) that she fraudulently shipped and the crime's duration over five years are evidence that she had discretion and occupied a position of trust. *See United States v. Deal*, 147 F.3d 562, 564 (7th Cir. 1998).

Next, Kidd asserts that the district court erred by conflating the colloquial meaning of trust with "position of trust" described in § 3B1.3. Relying on decisions from sister circuits, *see United States v. Douglas*, 885 F.3d 124, 135 (3d Cir. 2018) (en banc);

*United States v. Tann*, 532 F.3d 868, 875–76 (D.C. Cir. 2008), Kidd contends that "position of trust" for purposes of § 3B1.3 is a term of art that requires "professional or managerial discretion," demanding more than the conversational understanding of trust (*i.e.*, that an employee will refrain from abusing her access to company property). Kidd argues that her physical access to her employer's products, without more, does not amount to the "professional or managerial discretion" required to apply the enhancement.

Kidd misapprehends *Douglas'*s significance. Even if we applied the Third Circuit's analysis, Kidd likely would be found to have held a position of trust. In *Douglas*, the court conditioned application of § 3B1.3 on one of two circumstances: whether the defendant had the authority to make decisions "substantially free from supervision" based on (1) a fiduciary-like relationship or (2) an authoritative status that would lead the employee's judgment to be "presumptively accepted." *Douglas*, 885 F.3d at 133. Douglas, an "ordinary line mechanic," was found not to occupy a position of trust because he was not a fiduciary and his job did not require him to exercise any judgment, much less judgment that others accepted. *Id*. at 134–35. Kidd, by contrast, exercised judgment to supervise employees in the shipping department and ensure that the department accurately selected and packaged merchandise for customer orders. Moreover, Kidd's ability to authorize illicit shipments for over five years without oversight demonstrates that her judgment was "presumptively accepted." *Id*. at 133.

Finally, Kidd argues that the district court erred in applying the enhancement because she had no fiduciary powers. She asserts that the proper inquiry of a position of trust asks whether a fiduciary-like relationship exists. *See Douglas*, 885 F.3d at 133. One rationale for § 3B1.3, she continues, is to punish those in fiduciary positions where the business cedes its decision-making authority to someone in control of its affairs. *See United States v. Tatum*, 518 F.3d 369, 373 (6th Cir. 2008).

But a fiduciary relationship is merely one way to demonstrate a position of trust. Indeed, *Tiojanco* expressly contemplates a second category of positions of trust that does not require a fiduciary duty, but instead involves low-level, situation-specific decision-making by an employee with nominal review, a description that fits Kidd. 286 F.3d at 1021. The employee's level of discretion, not the existence of a fiduciary relationship, is the "touchstone for finding that the defendant occupies a position of trust." *Tatum*, 518 F.3d at 374.

                                                                      AFFIRMED